UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

JANE DOE,

           Plaintiff,

v.

NCL (BAHAMAS) LTD., A BERMUDA
COMPANY d/b/a NORWEGIAN CRUISE LINE and/or NCL AMERICA,

           Defendant.

_____/

**COMPLAINT FOR DAMAGES**

Plaintiff sues the Defendant and alleges and says:

**THE PARTIES AND JURISDICTION**

1. This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2. **THE PLAINTIFF,** JANE DOE, is *sui juris* and is a permanent resident and citizen of a resident of Georgia. "JANE DOE" is an alias used because of the nature of the events in this matter. The Defendant are aware of the identity of JANE DOE.

3. **THE DEFENDANT**. The Defendant, NCL (BAHAMAS), LTD., d/b/a NORWEGIAN CRUISE LINE (hereinafter referred to as "NCL"), has its principal place of business in Miami, Florida. NCL is incorporated outside the state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida.

1

At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject incident occurred.

    4.    **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state, and arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333, and is being filed in Federal Court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

    5.    **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

    a.    Operated, conducted, engaged in, or carried on a business venture in this state and/or county; and/or

    b.    Had an office or agency in this state and/or county; and/or

    c.    Engaged in substantial activity within this state; and/or

    d.    Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181, or 48.193;

    6.    All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7. **DATE OF INCIDENT.** This incident occurred on September 7, 2015.

8. **LOCATION OF INCIDENT.** This incident occurred on the vessel M/V *Norwegian Sky*, a ship in navigable water while the Plaintiff was a passenger board. Accordingly, the Plaintiff's claims are governed by the general maritime law.

9. **STATUS OF PLAINTIFF AS OF DATE AND TIME OF INCIDENTS.** At all times and material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel. The Plaintiff does not have a copy of the subject ticket but the Defendant does.

11. **NCL ENCOURAGES UNLIMITED DRINKING.** As the cruise line knows, most passengers drink more on cruise ships than they do on land. They do not have to drive home and generally let their guard down in the relaxed atmosphere created by the cruise line. Yet, NCL does not impose any restrictions on drinking. Nor does NCL provide added security to intoxicated passengers. In contrast, NCL encourages drinking by offering and selling beverage packages to passengers such as "the Norwegian Sky Free Open Bar Unlimited Beverage Package".

12. For example, JANE DOE in a four and a half hour period on September 7, 2015 was served and consumed at least one vodka and Sprite, two Crown Royal and ginger ale and two Long Island ice teas. With her 5'11 frame and 150 pounds she was visibly intoxicated. Within a few minutes of ingesting the last beverage JANE DOE became disoriented, weak and confused. This beverage, a Long Island ice tea , which caused her to become disoriented, weak and confused was prepared and served to her by the bar server who subsequently sexually assaulted her.

13. **THE BUSINESS MODEL; WORKING CONDITIONS AND THE FAILURE TO SCREEN, TRAIN, AND MONITOR.** The cruise line hires its crew from underdeveloped

countries or from countries where the economies are bleak and the unemployment rates are high. The cruise line chooses to hire from these countries to pay low wages and to get a willing workforce to work on a ship away from home for months at a time and for 7 days a week, often 12 to 14 hours a day.

14. The cruise line utilizes agents or "hiring partners" in these countries and relies on the "hiring partners" to obtain background information on the candidates for hire. As the cruise line knows, it is all but impossible to obtain complete and reliable background information, medical and psychological records, and criminal records in such countries. And the "hiring partners" are paid per person actually hired by the cruise line. Accordingly, the cruise line places a disincentive on its "hiring partners" to conduct background checks which can result in exclusion of people for hire.

15. The cruise line then fails examine and test—reasonably under these circumstances-- the applicants for a job which involves this level of contact with the public. The cruise line also fails to train these crewmembers well, and then fails to monitor the crewmembers. NCL's failure to select, train and control its male crew members and/or officers to stay away from female passengers is disastrous in combination with NCL encouraged partying and drinking on its ships. Knowing that female passengers will get intoxicated on its ships, NCL fails to provide a safe environment for its female passengers. NCL fails to protect its female passengers from sexual assault, battery and rape by its crew members and/or officers. NCL fails to warn female passengers that NCL's male crew and/or officers represent a danger to female passengers.

16. NCL hires male crew members and/or officers who are from a variety of different cultures. These crew members and/or officers are away from their wives and girlfriends for months at a time. The crew members and/or officers are inadequately screened and trained to deal with female passengers on its cruise ships. The cruise line's alleged "zero tolerance" policy for fraternization

between crew and passengers and/or officers is not implemented and enforced on the cruise ships. On the *Norwegian Sky* the bar server was openly fraternizing with the Plaintiff and later when questioned by security admitted that he had.

17.     The cruise invites 2000 to 3000 passengers and over 1000 crew on to an enclosed living and partying situation.  The cruise line knows that crimes occur on their ships, including sexual assaults. Yet, the cruise line fails to provide for the safety and security of its passengers during its cruises.  This failure of safety and security results in sexual assaults and personal injuries to its passengers.

18.     Further, the cruise lines fails to monitor and control its crewmembers onboard the ship in a reasonable manner including but not limited to monitor bar server on the M/V *Norwegian Sky* who is in direct contact with passengers.  In sum, NCL fails to provide a reasonably safe environment for its passengers on the M/V *Norwegian Sky* and to protect passengers from sexual assault, battery and rape by its crew members.

19.     **DESCRIPTION OF THE INCIDENT.**   On September, 7, 2015, NCL's crew member committed battery, sexual assault and sexual battery on the Plaintiff and falsely imprisoned the Plaintiff who at the time was a cruise line passenger. Immediately after setting sail, the NCL bar server singled out JANE DOE as a target and preyed on her. The crew member plied her with alcohol and/or spiked the Plaintiff's beverage. The Plaintiff became disoriented, week, and confused immediately following ingesting the last beverage served to her by her assailant. The bar server and/or with the possible help of an accomplice took the Plaintiff against her will into an isolated, crew-only storage room on deck 12 of the M/V *Norwegian Sky* cruise ship.  The door to the storage room was a heavy industrial type door which is kept locked.

20. The bar server and/or with the possible help of an accomplice unlocked the industrial type door to the storage room and placed the Plaintiff in the room. The door shut close. The Plaintiff started to panic and was crying and tried to open the door but could not get the door open.

21. The door opened again and loudly closed shut. The bar server who had fraternized with her and server her alcohol on deck 12 is now inside the storage room. The Plaintiff is unable to stand on her legs and fell to her knees. The crew member is next to her holding his penis in his hand. She begs him to let her out and exclaims that "I want to leave". He ignores her request. She screams: "No! Leave me alone!" but nobody hears her. Terrified of being sexually assaulted and raped, the Plaintiff cries and pleads with the bar server to leave her alone. She desperately begs him to leave her alone. The bar server pushes her head down towards his penis and says "be a good girl". She blacks out.

22. After the Plaintiff is freed, she finds herself on the ground on Deck 11 near a bar, mentally confused, crying hysterically and unaware of how she got there. Immediately after coming to herself, JANE DOE felt discomfort, tenderness, and soreness to her private parts evidencing vaginal and/or digital penetration by the bar server. The bar server sexually assaulted, sexually battered and raped JANE DOE. The Plaintiff immediately notified a security officer that she had been raped.

23. **<u>NCL FAILED TO SECURE EVIDENCE</u>**. NCL security and/or other NCL crew and officers are called to deck 11 where JANE DOE is on the ground crying hysterically. Despite JANE DOE reporting that she has been raped, NCL crew and officers do not immediately take JANE DOE to the infirmary to perform a rape kit. Instead, NCL employees take JANE DOE to her room in a wheel chair and ordered her to drink water. NCL crew ordered room service and a

pizza despite JANE DOE telling them that she did not want to eat. On command she drinks and eats. As a consequence she urinates 3 times before NCL employees take her to the infirmary. Consequently, NCL intentionally and in complete disregard of rape kit protocol interfered with collection of evidence and/or spoliated evidence from the sexual assault and/or possibly of the spiking of the alcoholic beverage the assailant served JANE DOE.

24. The Plaintiff was taken to the infirmary wherein she was greeted by a shipboard nurse who did not comfort the Plaintiff. The doctor and the nurse proceeded to take the evidence, and they removed the Plaintiff's clothes and kept them as evidence. The shipboard medics continued to ask the Plaintiff what had happened. The Plaintiff feeling frustrated and upset, told them what she knew, that the bar server that had given her the last drink and scanned her sea pass, had sexually assaulted her in a crewmember only area.

25. With the information provided by the Plaintiff, NCL was able to identify her assailant. The Plaintiff provided NCL's security officers with a description of the bar server and the receipt for her drink which included the name of the bar server. She also described the location of the assault. The Plaintiff was given medication to prevent any possible infections and a morning after pill to prevent any pregnancy and she was told to see her doctor upon her arrival at home.

26. The same day, a female security escorted JANE DOE to the storage room on deck 12 where the sexual assault had occurred. The security officer tried to convince JANE DOE that the storage room was located on deck 11 and not on deck 12, however, JANE DOE insisted that the storage room where the sexual assault had occurred was located on deck 12. She was correct.

27. JANE DOE located the storage room on deck 12, however, the security officer is not able to open the door. A key is needed. She retrieves a key and opens up the door and asked JANE DOE to step inside. JANE DOE steps inside and the door slams shut. JANE DOE is in the

room where she was sexually assaulted earlier in the day and she cannot get out. She panics. JANE DOE demands that the security officer opens the door. The security officer refuses to open the door. Instead the NCL security officer tells JANE DOE that she must calm down or she will not agree to let JANE DOE out. After about 5 minutes, JANE DOE, says she is not going to calm down until the door is opened. The door is finally opened after what seemed like an eternity to JANE DOE.

28. **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN REGARD TO SEXUAL ASSAULT AND BATTERY.** The general maritime law, state and federal, imposes a strict liability on the common carrier, including the cruise line herein, for sexual assault, sexual battery and rape. This is a "special non-delegable duty owed by the carrier to the passenger". *Doe v. Celebrity Cruises, Inc.*, 394 F. 3d 891, 907 (11th Cir. 2004); *New Orleans and N.E.R. Co. v. Jopes*, 142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919 (1891); *New Jersey Steam-Boat Co. v. Brockett*, 121 U.S. 637, 7 S.Ct. 1039, 30 L.Ed. 1049 (1887); thus, the cruise line has an "unconditional responsibility" for its employees misconduct. *Tullis v. Fidelity and Casualty Company of New York*, 397 F. 2d 22, 23 (5th Cir. 1968) as cited by the Eleventh Circuit Court of Appeals in *Doe v. Celebrity Cruises Inc.*, 394 F. 3d at 909. "It is a widely adopted rule that common carriers owe such an absolute duty to their passengers". *See Doe v. Celebrity Cruises Inc.* 394 F. 3d at 911.

29. **DUTIES OWED BY THE DEFENDANT TO ITS PASSENGERS IN GENERAL.** The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3D03-2132 (Fla. 3d DCA Opinion filed July 21,2004) *citing Kermarec v. Compagnie Generate Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); and *Harnesk vs. NCL Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D.

Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited, S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985).

**COUNT I**
**DIRECT NEGLIGENCE OF THE CRUISE LINE:**
**NEGLIGENT HIRING, RETENTION, TRAINING, AND SUPERVISION**

30.     The Plaintiff, JANE DOE, hereby adopts and realleges each and every allegation in paragraphs 1 through 29, above.

31.     NCL had a duty to use reasonable care under the circumstances to maintain their ship in a reasonably safe condition commensurate with the activities conducted thereon and to prevent harm to its passengers resulting from the foreseeable sexual assault, battery and rape by crew and/or officers.

32.     In particular, the Defendant had a duty to take such precautions as were reasonably necessary to protect its passengers from sexual assault, sexual battery, rape and physical battery and rape which was reasonably foreseeable.

33.     The Defendant knew, or in the exercise of reasonable care should have known, that on board the cruise ships there have been numerous sexual assaults, sexual batteries, rapes, and attacks perpetrated by crew and/or officers on passengers. Given the circumstances of the hiring process, the job itself, and the conduct of the crew onboard the ships—more fully described herein—sexual assault by crew members is an ongoing and repetitive problem.

34.     The Defendant cruise line breached its duty to exercise reasonable care under the circumstances by its failures and by its choices of rules, regulations, policies, and procedures, and by its other actions and conduct including but not limited to the following:

a. Failing to implement, reasonable and proper procedures for the safety and security of the passengers onboard the ship, including the safety of female passengers;

b. Failing to warn female passengers that there are sexual predators amongst NCL's crew and/or officers;

c. Failing to supervise the activities of NCL employees onboard the subject vessel;

d. Failing to have surveillance in crew and/or officers areas so that crew and/or officers off duties activity can be monitored;

e. Failing to prevent crew and/or officers from conducting sexually assault, sexual battery and rape on passengers onboard the subject vessel, including the Plaintiff herein;

f. Failing to recruit crew and/or officers from countries where proper background checks can be ascertained;

g. Failing to make inquiries into the background of or otherwise screen those persons, employees and/or agents hired for the cruise line;

h. Failing to make inquiries in a reasonable and/or complete manner;

i. Failing to reasonably and properly control NCL employees;

j. Failing to reasonably and properly monitor NCL employees;

k. Failing to provide rules, regulations, policies, and/or procedures for NCL employees regarding fraternization with passengers;

l. Failure to reasonably and properly train crew not to fraternize with passengers;

m. Failure to reasonably and properly enforce rules, regulations, policies and procedures for NCL employees who fraternize with passengers;

1

n. Failure discharge NCL employees who breach rules, regulations, policies and procedures for NCL employees who fraternize with passengers;

o. Failing to have reasonable and proper methods of preventing crime to be committed by NCL employees by means of surveillance thereby protecting users, customers, and invitees of the vessel, including the Plaintiff:

p. Failing to implement reasonable and adequate security policies, security measures, and security procedures necessary to protect passengers on the subject ship;

q. Failing to control passengers excessive drinking;

r. Failing to warn passengers that the vessel is not a safe place for female passengers;

s. Failing to comply with applicable industry and other standards, statutes, and/or regulations the violation of which negligence per se and/or evidence of negligence and/or; and

35. NCL by its failures, including but not limited to, its failure to screen, to train, monitor male crew members and/or officers not to fraternize with passengers, NCL allowed and facilitated that the sexual assault, sexual battery, and rape of JANE DOE.

36. NCL's negligence in facilitating and allowing the sexual assault, sexual battery, and rape have caused the Plaintiff to suffer damages, economic and non-economic, past and future, for bodily injury, emotional distress, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, medical and psychological treatment expenses, and such expenses to be incurred in the future including the loss of the ability of the Plaintiff to earn money in the future. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant for damages, economic and non-economic, past and future, suffered as a result of the Plaintiff's bodily injury, emotional distress, mental anguish, pain and suffering, loss of the capacity for the enjoyment of life, medical and psychological treatment expenses and such expenses to be incurred in the future including the loss of the ability of the Plaintiff to earn money in the future, and for any and all other damages which the Court deems just and appropriate.

## COUNT II
## FALSE IMPRISONMENT

37.     The Plaintiff hereby adopts and realleges each and every allegation in paragraphs 1 through 29, above.

38.     The Defendant, through its employees, the bar server and subsequently its security officer, committed false imprisonment of the Plaintiff by placing her in the storage room against her will and refusing to let her out upon her repeated requests. This false imprisonment has caused physical and emotional pain and suffering and other economic and non-economic damages.

39.     The Defendant, through its employees, the subject bar server and its security officer, unlawfully detained and deprived the Plaintiff of her liberty; against the Plaintiff's will; without legal authority or color of authority; and the detention was unreasonable and unwarranted under the circumstances.

40.     The false imprisonment, that is, placing and keeping the Plaintiff in a storage room which door could only be unlocked with a key and trapping the Plaintiff in that room against her will first by her assailant and subsequently by NCL's security officer proximately caused injuries and damages to the Plaintiff. Those injuries and damages include, emotional distress, mental anguish, pain and suffering, loss of the capacity for the enjoyment of life, medical and psychological treatment expenses and such expenses to be incurred in the future including the loss of the ability

of the Plaintiff to earn money in the future.  The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant damages, economic and non-economic, past and future, suffered as a result of the two instances of false imprisonment of the Plaintiff, emotional mental anguish, pain and suffering, loss of the capacity for the enjoyment of life, medical and psychological treatment expenses and such expenses to be incurred in the future including the loss of the ability of the Plaintiff to earn money in the future, and for any and all other damages which the Court deems just and proper.

**COUNT III**
**STRICT LIABILITY FOR SEXUAL ASSAULT,**
**SEXUAL BATTERY, AND RAPE**

The Plaintiff JANE DOE, hereby adopts and realleges each and every allegation in paragraphs 1 through 29, above.

41.    On the date of the subject incident, NCL's employee, the bar server, committed the intentional acts of sexual assault, sexual battery, and rape on the Plaintiff, a passenger. The Plaintiff recognized the voice of the perpetrator to be the bar server who had just served her last Long Island Ice Tea. JANE DOE described the NCL employee to the security officer and medical staff and provided the chief security officer with the receipt for the last beverage enabling NCL to identify the bar server.

42.    Trapped in a crew-only storage room to which can only be access by key, the bar server member is standing next to her holding his penis on his hand cruelly ignoring her plea to be left alone and to be let out of the room. The bar server pushes her head down towards his penis and commands her to "be a good girl". She blacks out. Immediately after coming to herself, JANE DOE felt discomfort, tenderness, and soreness to her private parts evidencing vaginal and/or

digital penetration by the bar server. The bar server sexually assaulted, sexually battered and raped JANE DOE.  The Plaintiff immediately notified a security officer that she had been raped.

43. NCL's employee's intentional acts of sexual assault, sexual battery, and rape of the Plaintiff have caused the Plaintiff to suffer damages, economic and non-economic, past and future, for bodily injury, emotional distress, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, medical and psychological treatment expenses, and the loss of the ability of the Plaintiff to earn money in the future. The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendants for damages, economic and non-economic, past and future, suffered as a result of the Plaintiff's bodily injury, emotional distress, mental anguish, pain and suffering, loss of the capacity for the enjoyment of life, medical and psychological treatment expenses and the loss of the ability to earn money in the future, punitive damages, and for any and all other damages which the Court deems just and proper.

By: *s/   John H. Hickey*
**JOHN H. HICKEY (FBN 305081)**
hickey@hickeylawfirm.com
**BJORG EIKELAND (FBN 37005)**
**beikeland@hickeylawfirm.com**
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorneys for the Plaintiff*